LAW OFFICES OF
JEFFREY LICHTMAN
441 LEXINGTON AVENUE
SUITE 504
NEW YORK, NEW YORK 10017
www.jeffreylichtman.com

JEFFREY LICHTMAN
JEFFREY EINHORN
PAUL TOWNSEND

PH: (212) 581-1001
FX: (212) 581-4999

September 30, 2026

The Honorable Judge Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

**Re: United States v. Linxin Wu, 26 Cr 245 (PAE)**

Dear Judge Engelmayer:

In response to the Court's September 14, 2026 Order, the parties submit the following joint letter on their respective positions with respect to the billing issue in this case.

**The Lichtman Firm's Position**

On July 26, I met with Mr. Wu at the MDC to discuss his case. While there, I informed Mr. Wu that I was leaving Mr. Gottlieb's firm and that unless he decided to come with me to my new firm, I would no longer be representing him. Mr. Wu requested that I remain as his lawyer as his family had initially sought me out to represent him and I was the only lawyer in the firm that he had any dealings with. I informed him that he had the absolute right to the lawyer of his choice, whether that was me, Mr. Gottlieb, or anyone else. Mr. Wu then executed a substitution of counsel form.

On the morning of July 28, I resigned from Mr. Gottlieb's firm. During the conversation I had with him early that morning he specifically asked if I had disclosed my leaving to any clients. I indicated that I had spoken to, *inter alia*, Mr. Wu, as he had been a client who came to the firm specifically through me. I informed Mr. Gottlieb that Mr. Wu was aware that I was leaving, and that he had plainly stated to me that he wanted to come with me and for me to stay his lawyer. I informed Mr. Gottlieb that Mr. Wu had executed a substitution of counsel form. I also informed Mr. Gottlieb of two other clients who had executed substitution of counsel forms as well, both clients whose cases I had brought into the firm.

Prior to my departure from the firm, during the time we represented Mr. Wu from June 26 through July 27 (Gottlieb bill attached), there was a single billing entry by Mr. Gottlieb, for a

joint call he and I had with Mr. Wu on July 23. Other than that, he had not spoken to the client or his family, he had not spoken to the prosecutors, and he had not spoken to prior counsel. He had never reviewed a single piece of paper on the case as evidenced in his bill. His associate, Ms. Kreitenberg, had no billing entries prior to July 28 at all. Yet after I left the firm on July 28 and put Mr. Gottlieb on notice of Mr. Wu's intention to come with me to my new firm, he instructed Ms. Kreitenberg to enter her appearance in the case. He reached out to the prosecutors and picked up a discovery hard drive, and three members of the firm commenced reviewing discovery for multiple hours on July 28.

The following day, July 29, Mr. Gottlieb and Ms. Kreitenberg visited Mr. Wu at MDC, while other members of the firm continued billing hours of discovery review. This was the first time that either individual had visited Mr. Wu and the first time Ms. Kreitenberg had ever spoken to him.

In our telephone call to attempt to resolve this billing issue, Mr. Gottlieb said that on July 28 I never informed him that Mr. Wu executed a substitution of counsel form, or that Mr. Wu said he wanted me to continue representing him. He states that I merely informed him that I told Mr. Wu of my impending departure but, despite Mr. Wu having executed the substitution of counsel form on July 26, did not bring it up. This is false. The substitution of counsel form was emailed to Mr. Gottlieb on July 29. I had no subsequent personal conversation with Mr. Gottlieb between my formal resignation and sending him that email the next day. Yet in the email I sent to him the next day with the three substitution forms, I wrote "I'm also attaching the substitution forms for the clients who want to continue to have me represent them ...." My reference to "the substitution forms" makes clear that this was not the first time I had brought this issue up to Mr. Gottlieb, as I had done so the day before when I quit the firm. Why would I have not mentioned on July 28 that Mr. Wu was leaving with me to my new firm, if he had already executed the substitution of counsel form on July 26, two days earlier? My July 29 email makes it very clear that these are the forms I had previously brought up to him the day before, which were sent to him in a follow-up email.

This has led to the following dispute:

- The total amount of Mr. Gottlieb's invoice is $32,042.50. The amount of money billed after my departure, after Mr. Gottlieb's firm was notified that they were discharged, is $10,947.50, more than one-third of the total bill. Mr. Wu should not be held responsible to pay the billing entries for July 28, 29, and 30 on the invoice as Mr. Gottlieb had already been notified that he had been discharged. Mr. Gottlieb's present bill, interestingly, is completely at odds with his assertion in Court on September 14 that the total amount of time billed by his firm on Mr. Wu's case, besides my time, was only about $4000. See September 14, 2026 Conference Minutes, at 11:19-23. Now it has suddenly ballooned to nearly $17,000.

- Mr. Gottlieb claims he was informed by Mr. Wu of his termination on July 29, and that he ceased billing instantly. Yet on July 31 he filed a letter with the Court requesting an adjournment due to "a recent issue that has arisen concerning the *representation of my client."* This was entirely false, as even now Mr. Gottlieb claims he was no longer representing Mr. Wu by that date. In addition, neither I, nor Mr. Wu, were aware of this adjournment request – to which we never would have consented – and Mr. Gottlieb was careful to never make us aware of it beforehand, even though he admits presently that I was the sole attorney for Mr. Wu by then.

- When Mr. Wu learned of Mr. Gottlieb's inappropriate adjournment application, and that his case was adjourned nearly six weeks without his consent until mid-September, he angrily wrote his own letter to Mr. Gottlieb on August 7 which he asked me to file on the docket, as Mr. Gottlieb had still not executed the substitution of counsel form, turned over the file to my new firm or released Mr. Wu's retainer money. The substitution of counsel form was then not executed until August 12, five days after Mr. Wu's letter was filed on the docket.

- This is a dispute over Mr. Wu's funds, not partnership money. Yet I was served with a lawsuit on August 24 indicating that Mr. Gottlieb was attempting to place Mr. Wu's entire retainer in a separate escrow account pending litigation which was not scheduled for a court appearance *until late October* before this Court stepped in an assumed jurisdiction over the dispute.

In conclusion, we are not looking to negotiate or make an accommodation on the division of money that belongs to Mr. Wu – it is his money, not ours to spend. We simply want to factually determine what work was appropriately billed to Mr. Wu by Mr. Gottlieb's firm, period, and move on with the more important work of defending Mr. Wu in this case. It should be clear that Mr. Gottlieb's intentions toward Mr. Wu are not benign: he falsely claimed to the Court on July 31 that he was still representing Mr. Wu and inappropriately caused a 6 week adjournment of his case as he was incarcerated in the MDC; he attempted to take Mr. Wu's entire fee and place it into an escrow account for months until the relatively small amount of disputed funds was settled through arbitration, thereby potentially denying Mr. Wu his counsel of choice; and he suddenly claimed a huge desire to work on Mr. Wu's case after he was told he was being terminated – and engaged multiple lawyers in his firm to do hours of work when they had never before spent more than a few minutes on Mr. Wu's case during the entire firm's representation.

**The Gottlieb Firm's Position**

We provide the following information as Your Honor requested concerning the status of the retainer dispute between Robert C. Gottlieb and Associates PLLC ("Gottlieb Firm") and Mr. Townsend. Since our last appearance in Court, the parties exchanged a number of letters and exhibits. Yesterday, I initiated a telephone call with Mr. Townsend in an attempt to reach an agreement. Unfortunately, the call was terminated abruptly without any resolution of the key issues in dispute. Please see below for the remaining areas of disagreement concerning the Wu retainer.

**REMAINING AREAS OF DISAGREEMENT**

1. The Court specifically directed Mr. Townsend to furnish to the Gottlieb Firm all documents including phone records, bearing on the Gottlieb Firm's claims about unbilled work by Mr. Townsend. Despite Mr. Townsend recently providing some of his time that he had failed to post, we still have not received texts, emails or cell phone records of all his conversations and communications with Mr. Wu and Mr. Wu's parents from his personal cell phone.

2. Mr. Townsend disputes all time beginning on July 28, 2026. He incorrectly claims that the Gottlieb Firm was on notice as of July 28, 2026, the day of his sudden departure from the Gottlieb Firm, that Mr. Wu had discharged us and had signed a Substitution of Counsel form. That is simply untrue. After receiving Mr. Townsend's resignation letter on July 28, I pressed him to disclose whether he had spoken to any Gottlieb Firm clients about his intended departure. All he told me and my colleague, Kaylee Kreitenberg, in a brief conversation in my office was that he had spoken to Mr. Wu (and two other Gottlieb Firm clients) about leaving prior to his resignation. The first we learned about the Substitution of Counsel form having been signed by Mr. Wu was on July 29, the day after Mr. Townsend's resignation and only after Kaylee Kreitenberg and I had spent nearly 3 hours meeting with Mr. Wu earlier that morning at the Metropolitan Detention Center ("MDC"), a meeting that was scheduled well before Mr. Townsend's sudden resignation. During that meeting, Mr. Wu did not tell us that he had previously signed the substitution form. We spent most of our time talking to him about case strategy and legal issues with no indication that he was switching lawyers. It was only at the end of the meeting that I asked Mr. Wu whether he had spoken to Mr. Townsend previously about his leaving the Firm. He confirmed that he had. I discussed his rights to be represented by the attorney of his choice, and he told me that he was going to call his parents after our meeting to discuss whether he should switch to Mr. Townsend and that he would get back to me with his decision. It was only after I arrived back in Manhattan that Mr. Wu called me to say he had spoken to his parents and was going to switch to Mr. Townsend. With that information that I received after I returned from MDC, I immediately instructed my staff to stop all work on Mr. Wu's behalf. No time was billed for work after that

telephone conversation with him. Not long after that phone call with Mr. Wu, I received Mr. Townsend's email with the attached substitution form executed by Mr. Wu on July 26, 2026, two days before Mr. Townsend's resignation, and only after my return from MDC and phone call with Mr. Wu. For these reasons, the time spent by the Gottlieb Firm on July 28 and July 29 prior to being informed that Mr. Wu was changing attorneys is properly included in our accounting. Additionally, there is one billing entry on July 30, 2026 which was entered on behalf of a summer associate. She conducted the work on July 29, 2026, which was explained to Mr. Townsend, but the time was not entered until the following day.

3. Mr. Townsend failed to bill for all his emails with AUSA Hines over a ten-day period of time. We previously provided him with those emails from the Firm's email account reflecting the email communications. In addition, included in this email thread are communications with AUSA Hines concerning the Protective Order in the Wu matter. Mr. Townsend failed to provide the time he spent reviewing and discussing the protective order that the government insisted on being signed by counsel for Mr. Wu in connection with review of discovery.

I remain hopeful that this dispute can be resolved quickly. Our preliminary accounting without Mr. Townsend's additional time reflects a total of $32,194.91 in legal services. Based on that amount, that would have resulted in a refund in the amount of $67,805.09. With Mr. Townsend's added time of 3.4 hours totaling $2,720 which he confirmed to us in a letter on September 29,2026, the refund would be $65,085.09. That still doesn't include the time that might be added if all texts, emails and telephone cell phone records are turned over for review.

Since the Gottlieb firm has already wired the Law Offices of Jeffrey Lichtman $70,000, based on the above calculation, the Gottlieb Firm is presently owed at least $4,914.91.

If Your Honor deems it helpful, we will provide the three letters and exhibits previously sent to Mr. Townsend supporting our claims. We stand ready to appear at a time convenient for the Court, if the Court deems it necessary.

Respectfully Submitted,

/S/ /S/

Paul Townsend
Robert Gottlieb

CC: all parties (Via ECF)

# INVOICE

Invoice # 1283
Date: 08/03/2026
Due Upon Receipt

## Robert C Gottlieb Associates PLLC

111 Broadway Suite 701
New York, NY 10006

Linxin Wu

### 01029-Wu

### Federal Criminal Matter

DRAFT

**Services**

| Type | Date | Attorney | Notes | Quantity | Rate | Total |
|---|---|---|---|---|---|---|
| Service | 06/26/2026 | PT | client visit at MDC | 2.00 | $800.00 | $1,600.00 |
| Service | 06/28/2026 | PT | client visit at MDC | 1.50 | $800.00 | $1,200.00 |
| Service | 06/29/2026 | PT | emailed case documents to client | 0.50 | $800.00 | $400.00 |
| Service | 06/30/2026 | PT | met client's parents at two verizon stores to get father added as authorized signer on account | 1.50 | $800.00 | $1,200.00 |
| Service | 07/01/2026 | PT | reviewed documents on PACER re bail denial | 0.50 | $800.00 | $400.00 |
| Service | 07/06/2026 | PT | Client visit at MDC | 1.50 | $800.00 | $1,200.00 |
| Service | 07/06/2026 | PT | Research | 1.50 | $800.00 | $1,200.00 |
| Service | 07/06/2026 | PT | legal research into operability of MCD's as prerequisite for charging, knowledge as an element, and what the Government has to prove to make out the charges. | 2.00 | $800.00 | $1,600.00 |
| Service | 07/06/2026 | DF | For SR:<br><br>Legal research re machine gun conversion devices . | 6.00 | $250.00 | $1,500.00 |
| Service | 07/07/2026 | PT | executed and sent substitution of counsel form to Jeff Chabrowe with request for him to call and discuss the | 0.20 | $800.00 | $160.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | case with us. | | | |
| Service | 07/07/2026 | DF | Research for entrapment | 0.50 | $250.00 | $125.00 |
| Service | 07/07/2026 | PT | received and filed substitution of counsel form, left message with AUSA | 0.10 | $800.00 | $80.00 |
| Service | 07/07/2026 | DF | A102 Research: Research re law on entrapment | 1.84 | $250.00 | $460.00 |
| Service | 07/07/2026 | PT | TC with Chabrowe | 0.50 | $800.00 | $400.00 |
| Service | 07/07/2026 | DF | For SR:<br><br>Legal research on MTA Uniform and Trespass | 6.00 | $250.00 | $1,500.00 |
| Service | 07/08/2026 | PT | review of memos on entrapment and lack of operability requirement for MCDs | 0.20 | $800.00 | $160.00 |
| Service | 07/08/2026 | PT | TC with AUSAs | 0.50 | $800.00 | $400.00 |
| Service | 07/08/2026 | DF | Legal Research on Entrapment | 0.80 | $250.00 | $200.00 |
| Service | 07/08/2026 | DF | For SR:<br><br>Research on Trespass and Jail Breaking Phones and Radios | 6.00 | $250.00 | $1,500.00 |
| Service | 07/09/2026 | PT | read through bail transcript for June 22 appearance | 1.00 | $800.00 | $800.00 |
| Service | 07/09/2026 | PT | discussion with BG about the bail transcripts | 0.20 | $800.00 | $160.00 |
| Service | 07/13/2026 | PT | TC with client | 0.25 | $800.00 | $200.00 |
| Service | 07/14/2026 | PT | texts with clients parents | 0.20 | $800.00 | $160.00 |
| Service | 07/14/2026 | PT | Corr Links email with client | 0.10 | $800.00 | $80.00 |
| Service | 07/15/2026 | PT | TC with prosecutors re: bail and discovery | 0.50 | $800.00 | $400.00 |
| Service | 07/19/2026 | PT | emails with client via corrlinks | 0.25 | $800.00 | $200.00 |
| Service | 07/19/2026 | PT | TC with prosecutors re: hard drives for discovery, case narrative, production of recordings for CI | 0.50 | $800.00 | $400.00 |
| Service | 07/20/2026 | PT | emails through corr links | 0.25 | $800.00 | $200.00 |
| Service | 07/20/2026 | PT | left message for Leandro Lima, witness identified by client | 0.10 | $800.00 | $80.00 |
| Service | 07/21/2026 | PT | corrlinks emails to and from client | 0.25 | $800.00 | $200.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Service | 07/21/2026 | PT | texts with client's parents | 0.20 | $800.00 | $160.00 |
| Service | 07/21/2026 | PT | TC with AUSAs to discuss recordings of client with CI, search warrant affidavits, and discovery production | 0.50 | $800.00 | $400.00 |
| Service | 07/22/2026 | PT | TC with prosecutor re: hard drive, discovery, sit down meeting to discuss facts, and upcoming court appearance | 0.50 | $800.00 | $400.00 |
| Service | 07/23/2026 | RG | CONF REMOTE WITH CLIENT | 0.60 | $950.00 | $570.00 |
| Service | 07/23/2026 | PT | video call with client | 0.75 | $800.00 | $600.00 |
| Service | 07/24/2026 | PT | dropped of discovery drive at USAO | 1.00 | $800.00 | $800.00 |
| Service | 07/28/2026 | KK | reviewed complaint, indictment, and began review discovery | 1.00 | $650.00 | $650.00 |
| Service | 07/28/2026 | RG | rev. discovery letter, documents; prep for mtg with client | 3.50 | $950.00 | $3,325.00 |
| Service | 07/28/2026 | DF | Reviewing discovery material to identify relevant documents. | 1.67 | $250.00 | $417.50 |
| Service | 07/28/2026 | KK | calls with prosecutor re hard drive | 0.20 | $650.00 | $130.00 |
| Service | 07/29/2026 | RG | mtg with client MDC | 3.00 | $950.00 | $2,850.00 |
| Service | 07/29/2026 | KK | meeting with client at MDC | 3.00 | $650.00 | $1,950.00 |
| Service | 07/29/2026 | AM | Picking up Discovery drive from 26 Federal Plaza | 0.50 | $250.00 | $125.00 |
| Service | 07/29/2026 | DF | Reviewed discovery material to extract relevant documents | 3.00 | $250.00 | $750.00 |
| Service | 07/30/2026 | DF | For SR:<br><br>Reviewing discovery to select relevant material to the case. | 3.00 | $250.00 | $750.00 |
| | | | | | **Services Subtotal** | **$32,042.50** |

## Expenses

| Type | Date | Notes | Quantity | Rate | Total |
|---|---|---|---|---|---|
| Expense | 07/24/2026 | Seagate Portable 2TB External Hard Drive HDD | 1.00 | $152.41 | $152.41 |
| | | | | **Expenses Subtotal** | **$152.41** |
| | | | | **Subtotal** | **$32,194.91** |
| | | | | **Total** | **$32,194.91** |

## Detailed Statement of Account

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 1283 | 08/03/2026 | $32,194.91 | $0.00 | $32,194.91 |
| | | | **Outstanding Balance** | **$32,194.91** |
| | | | **Total Amount Outstanding** | **$32,194.91** |

## Credit Balance

| Account | Balance |
|---|---|
| Operating Account Balance | $100,000.00 |
| **Total Account Credit** | **$100,000.00** |

You can make a **credit card** payment by clicking on "**Pay online now**" or
**Zelle** to **rgottlieb@robertcgottlieblaw.com**
***(Please be advised that there is a non-refundable processing fee of 3% on American Express and 2.95% on Visa/ Mastercard.)***

**Wiring instructions:**
JPMorgan Chase Bank, N.A.
Routing #: 021000021
Account #: 509520172 (Business Account)
International Swift Code: ChasUS33

Payment is due upon receipt.